**ADROVET et al.**

**v.**

**BRUNSWICK CITY SCHOOL DISTRICT BOARD OF EDUCATION.**

Court of Common Pleas of Ohio,
Medina County.

No. 99CIV0604.

Decided Nov. 19, 1999.

*George W. MacDonald*, for plaintiffs.

*Brian T. Robinson*, for defendant.

JAMES L. KIMBLER, Judge.

At a pretrial conference on November 2, 1999, the court, through its magistrate, advised counsel for the parties that in reviewing the record in this case the court did not discern that appellant Armando Adrovet had been provided by appellee school board with a "written notice of the intention to expel" from school, as required by R.C. 3313.66(B)(5)(a). Given the critical nature of this initial procedural issue, the court requested briefs on this issue, which briefs were recently filed by the parties.

In its brief, appellee takes the position that "Armando received personal written notice of the administration's intent to consider expulsion." As evidence to support this position, appellee attached to its brief as Exhibit 1 a copy of a "Notice of Intended *Suspension*" (emphasis added), dated May 13, 1999.[1]

Second, appellee argues that "Armando's parents, Mr. and Mrs. Milton Adrovet, also received separate notice of the administration's intent to suspend." In support of this argument, appellee cites a letter, a copy of which appears in the transcript as Exhibit B–5, dated May 26, 1999, and a copy of which is attached to appellee's brief as Exhibit 2.[2]

R.C. 3113.66 deals with the *suspension* as well as the *expulsion* of a student from school. For the sake of clarity, these different provisions within the statute need to be reviewed.

In terms of *suspending* a student, the statute provides:

"(A) Except as provided under division (B)(2) of this section, the superintendent of schools of a city, exempted village, or local school district, or the principal of a public school may suspend a pupil from school for not more than ten school

---

1. The court notes that this notice is not included in the transcript filed in this case and, therefore, arguably cannot be considered as evidence under R.C. 2506.03. However, the court will assume *arguendo* that it is evidence and, for the reasons that follow, finds that the notice does not comply with the notice provisions of R.C. 3313.66 insofar as that statute relates to expulsions from school as opposed to suspensions from school.

2. The present case does not relate to Armando's ten-day *suspension* from school, a point which appellants' counsel conceded at the pretrial conference on November 2, 1999. Rather, this case relates to Armando's *expulsion* from school on May 26, 1999. The court assumes that appellee's argument relative to a notice of intention to expel relates to a letter dated May 21, 1999 from appellee's superintendent to Armando's parents, and the court's analysis is based on this assumption. A copy of the May 21, 1999 letter appears in the transcript as Exhibit B–4.

days. * * * [N]o pupil shall be suspended unless prior to the suspension such superintendent or principal does both of the following:

"(1) Gives the pupil written notice of the intention to suspend the pupil and the reasons for the intended suspension * * *;

"(2) Provides the pupil an opportunity to appear at an informal hearing before the principal, assistant principal, superintendent, or superintendent's designee and challenge the reason for the intended suspension or otherwise to explain the pupil's actions."

With respect to the *expulsion* of a student from school, R.C. 3313.66 provides:

"(B)(1) Except as provided under division (B)(2), (3), or (4) of this section, the superintendent of schools of a city, exempted village, or local school district may expel a pupil from school for a period not to exceed the greater of eighty school days or the number of school days remaining in the semester or term in which the incident that gives rise to the expulsion takes place, unless the expulsion is extended pursuant to division (F) of this section. If at the time an expulsion is imposed there are fewer than eighty school days remaining in the school year in which the incident that gives rise to the expulsion takes place, the superintendent may apply any remaining part or all of the period of the expulsion to the following school year.

" * * *

"(5) No pupil shall be expelled under division (B)(1), (2), (3), or (4) of this section unless, prior to the pupil's expulsion, the superintendent does both of the following:

"(a) Gives the pupil and the pupil's parent, guardian, or custodian written notice of the intention to expel the pupil;

"(b) Provides the pupil and the pupil's parent, guardian, custodian, or representative an opportunity to appear in person before the superintendent or the superintendent's designee to challenge the reasons for the intended expulsion or otherwise to explain the pupil's actions.

"The notice required in this division shall include the reasons for the intended expulsion, notification of the opportunity of the pupil and the pupil's parent, guardian, custodian, or representative to appear before the superintendent or the superintendent's designee to challenge the reasons for the intended expulsion or otherwise to explain the pupil's action, and notification of the time and place to appear. * * *

" * * *

"(D) The superintendent or principal, within one school day after the time of a pupil's expulsion or suspension, shall notify in writing the parent, guardian, or

custodian of the pupil and the treasurer of the board of education of the expulsion or suspension. The notice shall include the reasons for the expulsion or suspension, notification of the right of the pupil or the pupil's parent, guardian, or custodian to appeal the expulsion or suspension to the board of education or to its designee, to be represented in all appeal proceedings, to be granted a hearing before the board or its designee in order to be heard against the suspension or expulsion, and to request that the hearing be held in executive session * * *."

An analysis of the foregoing provisions of R.C. 3313.66 indicates to the court that the Ohio legislature gave different authority and responsibility to different school officials, depending on whether a student faces suspension or expulsion. For example, a principal may suspend a student, but only a superintendent may expel a student. Furthermore, while either a principal or superintendent may give the required written notice relating to an intention to suspend, only a superintendent may give the required written notice relating to an intention to expel. These differences obviously relate to the reality that, in relative terms, expulsion is a more serious and consequential matter than is suspension; and, thus, the legislature has given only a superintendent the authority to give a written notice of the intention to expel, as well as the authority to actually expel a student.

Moreover, the information that a written notice of intention to suspend must contain is rather limited when compared to the information that a written notice of intention to expel must include. Again, these differences reflect the much more serious potential consequences for a student facing expulsion as compared to a student facing suspension.

Finally, there are differences as to who must be provided with a written notice of intention to suspend as compared to a written notice of intention to expel. With respect to the former, the statute requires that a student facing suspension be given a written notice of the district's intention to suspend. The student's parent, guardian, or custodian does not have to be notified. In contrast, when a student is facing expulsion, the statute requires that a superintendent give "the pupil *and* the pupil's parent, guardian, or custodian written notice of the intention to expel the pupil." (Emphasis added.) R.C. 3313.66(B)(5)(a). Again, the differences between the requirements of subdivision (A) and (B) of the statute relate to the relative seriousness of the potential punishment facing a student, depending on whether he or she faces suspension or expulsion.

However, the legislature, in subdivision (D) of the statute, makes it clear that after a student has been suspended or expelled, only the parent, guardian, or custodian of the pupil must be notified of the suspension or expulsion, along with the treasurer of the school system. The student does not have to be notified.

Turning now to the facts of this case and based upon the transcript, the court finds that, with one exception, appellee followed R.C. 3313.66 in its dealings with Armando. First, after Armando was suspended for ten days on May 13, 1999, his parents were given a "Notice of Suspension and Appeal Rights" in compliance with R.C. 3313.16(D) (Exhibit B–1, transcript). Second, on May 21, 1999, appellee's superintendent gave Armando's parents a written notice of "the possible expulsion of your son" (Exhibit B–4, transcript). The court finds that this notice, vis-à-vis Armando's parents, complied with the notice of intention to expel requirements of R.C. 3313.16(B)(5). Finally, the court finds that appellee complied with R.C. 3313.16(D) in providing Armando's parents with a notice dated May 26, 1999, from appellee's superintendent regarding Armando's expulsion from school. (Exhibit B–5, transcript).

■ With respect to the R.C. 3313.66(B)(5)(a) requirement that appellee give Armando written notice of its intention to expel him, appellee argues in its brief that appellee's notice of intended suspension, dated May 13, 1999, to Armando, complies with this statutory requirement. The court finds that this argument is without merit. First, the notice of intended suspension was not signed by appellee's superintendent, as required by the statute. Second, the notice does not comply with the mandatory language of 3313.66(B)(5) relative *to what* information must be included in the notice.

■ Next, appellee argues that the notice to Armando's parents (Exhibit B–4 in the transcript), dated May 21, 1999, constitutes notice to Armando. The court finds that this argument lacks merit because that notice was not addressed to Armando, nor does the notice indicate that a copy of it was sent or otherwise delivered to Armando.

The court, therefore, finds that there is no evidence before the court that appellee's superintendent gave *Armando* a "written notice of the intention to expel" as required by R.C. 3313.66(B)(5)(a).

Appellee in its brief argues that Ohio case law does not require that a student be given written notice of intention to expel. Appellee cites two unreported cases in support of this argument. Because *Brunswick City School Dist. Bd. of Edn. v. Formani* (Mar. 23, 1988), Medina App. No. 1671, 1988 WL 34601, unreported, deals with the issue of the suspension of a student and not the expulsion of a student, it does not represent a compelling precedent with respect to the case *sub judice.*

While the case of *Stuble v. Cuyahoga Valley Joint Vocational School Dist. Bd. of Edn.* (Oct. 7, 1982), Cuyahoga App. No. 44412, unreported, 1982 WL 5953, cited by appellee involves a student who was expelled even though he had not been given a written notice of intention to expel, that case is not binding precedent for

this court because *Stuble* is an unpublished opinion from an appellate court with no jurisdiction over this court. Furthermore, the court in *Stuble* held that "[p]resumably, appellee intended to notify both appellant and appellant's parent" by mailing the written notice to appellant's parent and that this "technique" was "both expedient and legally sufficient where, as here, appellant and his parent were known to reside at the same address." Even if this court were inclined to accept this rationale for the court's decision in *Stuble*, the transcript in the present case does not contain any evidence that Armando and his parents resided at the same address at the time the notice in question was sent to Armando's parents. Therefore, the case at bar is factually distinguishable from *Stuble*.

The court in *Stuble* cited a 1926 Ohio case for the proposition that substantial compliance was sufficient. However, this court is of the opinion that recent Ohio Supreme Court cases relating to statutory construction provide more guidance to interpreting R.C. 3313.66 than does the 1926 case of *Ashville Village School Dist. Bd. of Edn. v. Briggs* (1926), 114 Ohio St. 415, 151 N.E.2d 327, which, interestingly, relates to statutes concerning bond issues and not to the predecessor statute of R.C. 3313.66.

According to a 1998 Ohio Supreme Court opinion, to construe a statute, a court must "first look at [the statute's] express wording." *State v. Teamer* (1998), 82 Ohio St.3d 490, 491, 696 N.E.2d 1049, 1051. Further, the Supreme Court's position with respect to statutory construction is that a court has a duty "to give effect to the words used [in a statute] and not to insert words not used." *State ex rel. Richard v. Bd. of Trustees of Police & Firemen's Disability & Pension Fund* (1994), 69 Ohio St.3d 409, 412, 632 N.E.2d 1292, 1295.

Moreover, in an Attorney General Opinion issued in 1969, the Ohio Attorney General, in offering an opinion relative to interpreting R.C. 3313.66, opined that the statute must be strictly construed. One question before Attorney General Paul W. Brown (later Justice Brown) was whether a student could be suspended or expelled from school beyond the current semester when the statute at that time provided that "[n]o pupil shall be suspended or expelled from any school beyond the current semester." 129 Ohio Laws 239. Answering this question in the negative, the Attorney General stated: "Section 3313.66, Revised Code, must be interpreted strictly, with the result that the suspension or expulsion of a student may not extend beyond the current semester." 1969 Atty.Gen.Ops. No. 69–071, at 2–154.[3]

---

**3.** The court assumes that in response to the Attorney General's opinion, R.C. 3313.66 was amended by the legislature to expressly permit a suspension under subdivision (A) or an expulsion under subdivision (B) to be extended from one school year to the next. See 141 Ohio Laws, Part III, 5485; 144 Ohio Laws, Part I, 316. In any event, whatever motivated the change, the point still remains that the legislature made it and not the courts.

Given the foregoing general statutory construction principles recently set forth by the Ohio Supreme Court, as well as the foregoing Attorney General opinion relative to how R.C. 3313.66 is to be interpreted strictly, the court must come to the conclusion that the language contained in the statute, namely, "[n]o pupil *shall* be expelled under division (B)(1), (2), (3), or (4) of this section *unless, prior to the pupil's expulsion,* the superintendent *does* both of the following: (a) *Gives the pupil* and the pupil's parent, guardian, or custodian written notice of the intention to expel the pupil" (R.C. 3313.66[B][5][a] ), means exactly what it says. Moreover, if the court were to adopt the appellee's argument that notice to Armando's parents was notice to him, the court would, by judicial gloss, be required to insert words in the statute to the effect that "and written notice to a pupil's parents shall be deemed written notice to that pupil." Based upon the Ohio Supreme Court's unequivocal directive in *State ex rel. Richard,* this court does not have the power to rewrite the statute in question.

■ The court, having determined that R.C. 3313.66 requires that a *student* be notified in writing by the superintendent of the school system's intention to expel him or her, and having further determined that in the present case appellee did not satisfy the statutory requirement with respect to appellant Armando Adrovet prior to expelling him from school on May 26, 1999, must now determine the legal consequences of these determinations.

R.C. 2506.04 controls the court's review in this action. That statute provides:

"The court may find that the order, adjudication, or decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record. Consistent with its findings, the court may affirm, reverse, vacate, or modify the order, adjudication, or decision, or remand the cause to the officer or body appealed from with instructions to enter an order, adjudication, or decision consistent with the findings or opinion of the court."

Given the procedural facts of this case as evidenced by the transcript, and the law applicable to those facts, this court reluctantly must hold that the expulsion of Armando Adrovet by appellee as set forth in the document identified as Exhibit B–5 in the transcript was and is illegal under Ohio law.[4]

Accordingly, appellee, the Brunswick City School District Board of Education, is hereby ordered to expunge from appellant Armando Adrovet's school records

---

4. This holding is not to be construed as a decision relative to the merits of this case, *i.e.,* whether appellee was justified in expelling Armando because a determination was made that Armando violated appellee's Student Conduct Code relative to drugs, notwithstanding that the amount of drugs involved was quite small.

his expulsion from school on May 26, 1999 and to permit Armando to attend school, effective immediately, in the Brunswick Local School District.

Costs are hereby taxed to appellee.

SO ORDERED.

*Judgment accordingly.*